IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2016 JAN -4 PM 3: 59

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – MONROE, LLC, d/b/a MONROE HOSPITAL, | ) ) ) Case No. ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| INDIANA UNIVERSITY HEALTH BLOOMINGTON, INC., d/b/a IU HEALTH BLOOMINGTON HOSPITAL and d/b/a IU HEALTH BLOOMINGTON HOSPITAL EMERGENCY MEDICAL TRANSPORT SERVICES, | ) 1:16-cv-0003 RLY-DKL ) ) ) ) JURY TRIAL DEMANDED ) ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

Plaintiff Prime Healthcare Services – Monroe, LLC, d/b/a Monroe Hospital ("Plaintiff" or "Monroe Hospital") brings this action against Indiana University Health Bloomington, Inc., d/b/a IU Health Bloomington Hospital ("IU Hospital") and d/b/a IU Health Bloomington Hospital Emergency Medical Transport Services ("IU Ambulance") (collectively "Defendant"), for damages and injunctive relief to remedy the Defendant's unlawful monopolization of the market for emergency medical services in Monroe County, Indiana, and adjacent locations in which Monroe Hospital and IU Hospital are the closest facilities offering emergency medical services. In support of this Complaint the Plaintiff alleges and states as follows:

## INTRODUCTION

1. This Complaint arises from the Defendant's unlawful abuse and leveraging of a municipally-granted monopoly, in the provision of emergency medical transportation services in Monroe County, to unlawfully acquire, protect and enhance a long-standing monopoly in the market for emergency medical services in Monroe County and adjacent locations.

2. For decades, IU Hospital's predecessor, Bloomington Hospital, enjoyed an unchallenged monopoly in the market for emergency medical services in Monroe County and adjacent locations, and through its ambulance service was the sole designated provider of emergency medical transportation services in Monroe County.

3. In 2010, Bloomington Hospital and its ambulance service were acquired by Clarion Health Partners, Inc. Clarian Health then became Indiana University Health in 2011, completing the transition of Bloomington Hospital and its ambulance service to the current successor entities IU Hospital and IU Ambulance. IU Ambulance continues to be the sole designated provider of emergency medical transportation services in Monroe County. *See*, http://iuhealth.org/bloomington/emergency-services/ambulance-services/.

4. In 2006, Monroe Hospital began operations at a location in Bloomington only a few miles from Bloomington Hospital. With a 24-hour, fully-staffed emergency department, Monroe Hospital began a sustained effort to compete with Bloomington Hospital in the market for emergency medical services. This attempted competition has continued as Bloomington Hospital became Clarian and then IU Hospital.

5. Monroe Hospital, like IU Hospital, has a full-service, 24-hour, acute-care emergency medical department. It has an excellent safety record, high ratings for patient satisfaction, shorter average emergency room wait times than IU Hospital, and comparable or

2

lower pricing for common services. Nonetheless, nearly 10 years after Monroe Hospital's entry into the market, IU Hospital continues to possess a monopoly in the market for emergency medical services in Monroe County and adjacent locations, receiving at least 80% of emergency department visits even while Monroe County has substantial unused capacity.

6. IU Hospital's ongoing monopoly in this market is easily explained. By its own admission to Monroe Hospital representatives, IU Ambulance – which continues to be the sole designated provider of emergency medical transportation services in Monroe County – delivers 95% of the patients it services to IU Hospital's emergency department. By diverting patients to IU Hospital and away from Monroe Hospital, even when Monroe Hospital is the patient's facility of choice or is the closest suitable emergency medical service facility, IU Ambulance has blunted the success of Monroe Hospital's entry into the market, effectively excluding competition in order to maintain or enhance the substantially dominant market share held by IU Hospital.

7. This conduct by the Defendant, acting through IU Ambulance, is intended to protect or enhance IU Hospital's monopoly power in the market for emergency medical services. It is a violation of the federal and state antitrust laws to abuse or leverage *even lawfully-acquired* monopoly power in one market to acquire, protect or enhance monopoly power in another market. The Defendant's use of the municipally-granted monopoly in the market for emergency medical transportation services to protect or grow its monopoly in the market for emergency medical services, by thwarting or excluding competition by Monroe Hospital, is a violation of the antitrust laws.

8. Monroe Hospital brings this action to obtain damages for its losses caused by the Defendant's violations of the antitrust laws, and for injunctive relief preventing the Defendant from engaging in this anticompetitive conduct going forward.

## PARTIES

9. Prime Healthcare Services – Monroe, LLC (herein "Monroe Hospital" or "Plaintiff"), is a foreign limited liability company registered and authorized to conduct business in the State of Indiana, and is doing business in Indiana under the registered assumed name of Monroe Hospital. Monroe Hospital is incorporated in the State of Delaware and has a principal place of business located in Ontario, California.

10. Indiana University Health Bloomington, Inc. is an Indiana non-profit domestic corporation doing business in Indiana under the registered assumed name of IU Health Bloomington Hospital (herein "IU Hospital") and under the registered assumed name of IU Health Bloomington Hospital Emergency Medical Transport Services (herein "IU Ambulance"). Indiana University Health Bloomington, Inc. is incorporated in the State of Indiana and with a principal place of business in Bloomington, Indiana. Indiana University Health Bloomington, Inc. is the successor in interest to Bloomington Hospital, Inc.

## JURISDICTION AND VENUE

11. Monroe Hospital alleges federal antitrust claims against the Defendant pursuant to Section 2 of the Sherman Act. 15 U.S.C. § 2.

12. Monroe Hospital seeks damages pursuant to 15 U.S.C. § 15 ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall

4

recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee").

13. Monroe Hospital seeks injunctive relief pursuant to 15 U.S.C.§ 26 ("[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws …").

14. This Court has subject matter jurisdiction over the Plaintiff's federal antitrust claims pursuant to 15 U.S.C. §§ 4, 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

15. Venue is proper in this Court under 28 U.S.C. §1391 because: (i) Defendant Indiana University Health Bloomington, Inc. resides in this District and conducts a substantial amount of business in this District; and (ii) a substantial part of the events or omissions giving rise to the claim occurred, and continue to occur, in this District.

16. Monroe Hospital alleges state antitrust claims against the Defendant pursuant to Ind. Code § 24-1-2-2 and Ind. Code § 24-1-2-7. This Court has supplemental jurisdiction over the Plaintiff's state antitrust claims under 28 U.S.C. § 1367 because they are directly related to the Plaintiff's federal antitrust claims and form part of the same case or controversy.

## SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE

17. The conduct giving rise to the Plaintiff's claims has a substantial impact on interstate commerce. Monroe Hospital is owned and operated by Prime Healthcare, a hospital management company with nearly 40 hospitals and other health care facilities operating in 11 states, and therefore engages in interstate commerce in nearly all aspects of its operation, including the distribution of income. Monroe Hospital also treats patients from outside the State

of Indiana; purchases medicine, equipment, medical supplies and professional services from out-of-state suppliers; derives revenue from Medicare, Medicaid and out-of-state insurers.

18. On information and belief, Defendant also treats patients from outside the State of Indiana; purchases medicine, equipment, medical supplies and professional services from out-of-state suppliers; derives revenue from Medicare, Medicaid and out-of-state insurers.

### PROTOCOLS FOR EMERGENCY MEDICAL TRANSPORTATION

19. The appropriate determination of where a patient should be transferred for emergency medical services is based on factors ranging from the severity and immediacy of life-threatening injuries to patient choice. These factors are assessed under mandatory, state-adopted trauma protocols and locally-adopted EMS protocols.

20. For example, pursuant to Ind. Code § 16-31-2-7 and 836 I.A.C. 1-2.1-6, the Indiana Emergency Medical Services Commission has adopted, as the official "field triage decision scheme in Indiana, "Figure 2, Field triage of injured patients—United States 2011," which is found in the "Guidelines for Field Triage of Injured Patients – Recommendations of the National Expert Panel on Field Triage," published January 13, 2012, in the Centers for Disease Control and Prevention Morbidity and Mortality Weekly Report, MMWR/January 13, 2012/Vol. 61/No. 1. See, http://www.cdc.gov/mmwr/preview/mmwrhtml/ rr6101a1.htm#Fig2.

21. Under this protocol, patients requiring the highest level trauma care will be transferred to an appropriately certified facility, which would not include Monroe Hospital or IU Hospital. However, if the expected transportation time to such a facility was too long, the patient should be transferred to a lower level trauma care facility to be stabilized, which would include both Monroe Hospital and IU Hospital.

22. Also under this protocol, patients requiring a lower level of trauma care should be transferred to the closest suitable trauma care facility, which would include both Monroe Hospital and IU Hospital. Patients not falling within the trauma guidelines should be transferred to the "most appropriate medical facility as outlined in local EMS protocols."

23. Every ambulance service provider in Indiana "shall secure a medical director who shall be a physician with an unlimited license to practice medicine in Indiana and who has an active role in the delivery of emergency care." 836 I.A.C. 1-2-3(q). Among other responsibilities, the medical director monitors and evaluates "the day-to-day medical operations of the emergency medical service organization," provides "individual consultation to the emergency medical personnel affiliated with the emergency medical service organization," and "[e]stablish[es] protocols for automatic defibrillation, airway management, wound care, patient stabilization, patient assisted medications, and emergency medical technician administered medications as approved by the commission." *Id.*

24. The medical director of IU Ambulance is a physician associated with IU Hospital and not Monroe Hospital.

25. The non-trauma protocol used by IU Ambulance for patient transfer decision was prepared by and is overseen by the medical director of IU Ambulance. On information and belief, this protocol calls for patients to be transferred to the closest appropriate facility or, where medically appropriate, according to the wishes of the patient or the patient's family or guardian.

**RELEVANT PRODUCT MARKET**

26. The product market at issue in this case is the market for hospital-based emergency medical services, and both Monroe Hospital and IU Hospital compete in this market.

7

27. The emergency departments of Monroe Hospital and IU Hospital are both Level 3 trauma facilities, and with limited exceptions both emergency departments offer the same emergency medical services.

28. The emergency medical services offered by Monroe Hospital and IU Hospital are interchangeable as they must both meet the same standard of care and must equally comply with the same state and federal law.

29. In the absence of the anti-competitive conduct underlying this case there would be cross-elasticity of demand between the emergency medical services offered by Monroe Hospital and those offered by IU Hospital.

30. There are no products that consumers would substitute for emergency medical services in response to a small but significant and nontransitory price increase. Similarly, there are no producers (in the relevant geographic market) other than Monroe Hospital and IU Hospital that could easily and economically produce and sell emergency medical services in a short period of time in response to a small but significant and nontransitory price increase.

31. Public perception of the quality of care offered by Monroe Hospital and IU Hospital is comparable. According to Pro Publica ER Wait Watcher, 80% of patients would recommend Monroe Hospital (https://projects.propublica.org/emergency/hospital/150164), and 77% of patients would recommend IU Hospital (https://projects.propublica.org/emergency/hospital/150051).

**RELEVANT GEOGRAPHIC MARKET**

32. The relevant geographic market is Monroe County and adjacent locations in which Monroe Hospital and IU Hospital are the closest facilities offering appropriate emergency medical services according to the applicable protocol.

8

33. Monroe Hospital and IU Hospital are located relatively close to one another, and are approximately 3.2 miles apart by direct line, and 4.5 mile apart by road.

34. For some locations within the geographic market, either Monroe Hospital or IU Hospital, but not both, will clearly be the closest facility offering appropriate emergency medical services.

35. For a substantial portion of the geographic market, in light of natural barriers, transportation routes and traffic patterns, Monroe Hospital and IU Hospital could both be reasonably considered the closest facility offering appropriate emergency medical services.

36. Within the geographic market, there are no suitable substitutes for emergency medical services because no other facility could be the closest facility offering appropriate emergency medical services.

37. Conversely, outside of the geographic market, neither Monroe Hospital nor IU Hospital could be considered a suitable substitute for emergency medical services because, by definition, neither facility could be the closest facility offering appropriate emergency medical services. There is therefore little or no cross-elasticity of demand between the emergency medical service providers outside the geographic market on one hand, and Monroe Hospital and IU Hospital within the geographic market on the other.

## MARKET CHARACTERISTICS FAVORING MONOPOLIZATION

38. Several characteristics of the relevant product and geographic markets favor the creation and protection of monopoly power.

39. There are significant barriers to entry discouraging competitors from entering the market for emergency medical services. The significant cost of assembling emergency medical service facilities meeting the required standard of care is a significant barrier to entry requiring

substantial capital or the availability and willingness of long-term investors. Although Indiana does not require a Certificate of Need prior to the opening of a hospital, the federal and state regulatory barriers for running a hospital emergency department are also significant and require a substantial commitment of time and capital to ensure a fully-authorized facility prepared to obtain revenue from Medicare, Medicaid and private insurers.

40. The strict geographic market definition, determined by the distance to an appropriate emergency medical service provider, is also a significant barrier to entry because it prevents potential rival facilities from outside the geographic market from attempting to compete on price or even quality of service. Because these differentiating variables cannot overcome the problem of being the closest appropriate emergency medical service provider they do not allow competitors to challenge a monopolist's market power.

41. Even within the geographic market, finding a suitable location and obtaining necessary zoning and municipal cooperation is yet another barrier to entry discouraging successful new competition.

42. The significant inelastic nature of demand for emergency medical services in the product market also favors the creation and protection of monopoly power. Increases in price, and even changes in other variables like quality of care and customer satisfaction, will have little or no effect on the demand for emergency medical services.

43. The inherent advantage of being the long-term incumbent monopolist in this product and geographic market is also a significant barrier to entry by new competitors. IU Hospital possessed branding, goodwill, government relations and referral relationships from years of being the sole emergency medical service provider, all of which make successful market penetration by new entrants more difficult.

## IU HOSPITAL'S MONOPOLIZATION OF EMERGENCY MEDICAL SERVICES

44. Prior to the entry of Monroe Hospital into the market, IU Hospital – then operating as Bloomington Hospital – possessed a monopoly in the provision of emergency medical services in the relevant geographic and product markets. Bloomington Hospital had no competitors in the market.

45. In 2006, Monroe Hospital began operations at a location relatively near to IU Hospital, and offered a 24-hour, fully-staffed emergency department serving the same product and geographic market served by Bloomington Hospital, later known as IU Hospital.

46. Monroe Hospital possessed facilities, certification and personnel that were comparable to those offered by Bloomington Hospital. Monroe Hospital possessed excess capacity to treat additional patients in its emergency department, and was in a location that is in some cases the singular closest facility offering appropriate emergency medical services and in other cases one of two facilities that could reasonably be determined to be the closest facility offering appropriate emergency medical services.

47. Nonetheless, the monopoly within the market for emergency medical services held by Bloomington Hospital, and later by its successor IU Hospital, has continued from the time Monroe Hospital entered the market until the present.

48. For example, the following Table 1 compares the total number of emergency department visits at Bloomington/IU Hospital and Monroe Hospital, based upon internal data from Monroe Hospital and Hospital Service Reports filed by Bloomington/IU Hospital with the Indiana Department of Health:

**Table 1: Market Share by Emergency Department Visit**

| Year | Monroe Hospital | Bloomington/ IU Hospital | Market Share of Bloomington/IU Hospital |
|---|---|---|---|
| 2009 | 14,703 | 53,569 | 79% |
| 2010 | 12,453 | 52,821 | 80% |
| 2011 | 12,628 | 52,199 | 81% |
| 2012 | 13,206 | 49,145 | 79% |
| 2013 | 12,031 | 48,636 | 80% |
| 2014 | 11,393 | 47,819 | 81% |

49.    The predominant market share of Bloomington/IU Hospital in the relevant product and geographic markets, particularly in light of the market conditions favorable to monopolization, support the conclusion that IU Hospital and its predecessor possessed – and IU Hospital continues to possess – monopoly power in the market for emergency medical services.

50.    Substantial market power may be presumed when a defendant's share of the relevant market exceeds 70-75% for the five years preceding the complaint.

51.    IU Hospital's monopolization is also demonstrated by its secondary effect on the market for Medicare patients in the two geographically largest zip codes in Monroe County, 47401 and 47403:



52. Based on data collected by the American Hospital Directory (ahd.com) for the calendar year ending December 31, 2014, the following Table 2 compares the market share of Monroe Hospital and IU Hospital for Medicare patient resident discharges:

| Table 2: 2014 Market Share of Medicare Patient Resident Discharges by Zip Code | | |
|---|---|---|
| Zip Code | Monroe Hospital | IU Hospital |
| 47401 | 7.2% | 70.3% |
| 47403 | 8.2% | 70.9% |

53. IU Hospital and its predecessor Bloomington Hospital have, from before 2006 until the present, possessed market power in the market for emergency medical services in Monroe County and adjacent locations in which Monroe Hospital and IU Hospital are the closest

facilities offering emergency medical services. This market power has provided IU Hospital and its predecessor the ability to control prices and exclude competition in the market.

## DEFENDANT'S EXCLUSIONARY CONDUCT

54. From well before the time that Monroe Hospital began operations in 2006, IU Ambulance and its predecessor – instrumentalities of the Defendant – have been the sole designated providers of emergency medical transportation services in Monroe County.

55. Pursuant to Ind. Code § 16-31-5-1, the governing body of a city, town, township or county may contract for the provision of emergency medical services. Monroe County and the City of Bloomington have, through their respective governing bodies entered into agreements and adopted resolutions as necessary to designate IU Ambulance and its predecessor as the sole providers of emergency medical transportation services in Monroe County.

56. Despite and contrary to the protocols for emergency medical transportation, both as established by law and as dictated by the applicable standard of care, IU Ambulance and its predecessor have continuously and consistently delivered the vast majority of emergency medical transportation patients to whom they have provided services to IU Hospital and its predecessor Bloomington Hospital for the provision of emergency medical services.

57. By its own admission to Monroe Hospital representatives, IU Ambulance – which continues to be the sole designated provider of emergency medical transportation services in Monroe County – delivers 95% of the patients it services to IU Hospital's emergency department.

58. If IU Ambulance was consistently following an appropriate protocol for emergency medical transportation it would not be delivering 95% of the patients it services to IU Hospital's emergency department.

59. Representatives of Monroe Hospital have received anecdotal information about the practices of IU Ambulance, including: (i) existing patients of physicians practicing at Monroe Hospital have requested that they be taken to Monroe Hospital for treatment but have instead been taken to IU Hospital; (ii) patients from long term care facilities have requested that they be taken to Monroe Hospital for treatment but have instead been taken to IU Hospital; and (iii) members of the public have stated at public outreach events hosted by Monroe Hospital that they or their family members have requested that they be taken to Monroe Hospital for treatment but have instead been taken to IU Hospital.

60. The exclusionary conduct of IU Ambulance: (i) was intended and is intended to have the effect of foreclosing competition by Monroe Hospital's emergency department with IU Hospital's emergency department, (ii) did in fact have such an effect, and (iii) continues to have such an effect.

61. The exclusionary conduct of IU Ambulance has and does have the effect of impairing the opportunity of Monroe Hospital and any other potential rivals, does not further competition on the merits or on price, does not have a pro-business justification and is not based upon any perceived efficiency or pro-competitive purpose.

62. The exclusionary conduct of IU Ambulance as described herein constitutes the unlawful abuse and leveraging of an existing monopoly, predatory conduct and unjustifiable conduct by the Defendant taken for the purpose of acquiring, protecting and enhancing the monopoly power of IU Hospital in the market for emergency medical services in Monroe County and adjacent locations in which Monroe Hospital and IU Hospital are the closest facilities offering emergency medical services.

## INJURY TO COMPETITION IN THE RELEVANT MARKET

63. The Defendant's past and ongoing monopolization has had anticompetitive effects in, and caused competitive harm to, the emergency medical services market as a whole.

64. The Defendant's past and ongoing monopolization has harmed competition by restricting the ability of competitors to compete with IU Hospital and its predecessor on the basis of price, quality or service, to the detriment of consumers.

65. The Defendant's past and ongoing monopolization has harmed competition by both limiting and explicitly displacing customer choice of providers in the market for emergency medical services – whether exercised by patients, their family, their guardians or their physicians.

66. The Defendant's past and ongoing monopolization has harmed competition by limiting or precluding entry into the market for emergency medical services, including entry premised on innovation, to the detriment of consumers.

## ANTITRUST INJURY TO MONROE HOSPITAL

67. Monroe Hospital has been injured in its business and property by the monopolization and exclusionary conduct of the Defendant and its predecessors described herein.

68. The injury to Monroe Hospital's property and business flows from the anticompetitive effects of the Defendant's conduct and its harm to competition in the market as a whole.

69. Monroe Hospital has been injured in its business and property as a direct result of the monopolization and exclusionary conduct of the Defendant and its predecessors by the following: (i) Monroe Hospital has been restricted in its ability to compete for market share on

the basis of price, quality and service; (ii) Monroe Hospital has been deprived of market share that would have resulted from customer choice in instances where the Defendant displaced a valid exercise of customer choice; (iii) Monroe Hospital has been deprived of market share that would have resulted from IU Ambulance and its predecessor consistently following an appropriate protocol for emergency medical transportation; and (iv) Monroe Hospital has been deprived of market share in the secondary markets for inpatient services, outpatient services, medical supplies and equipment, etc., naturally flowing from the provision of emergency medical services.

70. As a result of the foregoing, Monroe Hospital has been harmed by the monopolization and exclusionary conduct of the Defendant and its predecessors in the form of lost revenue.

### COUNT I: VIOLATION OF SHERMAN ACT SECTION 2

71. Monroe Hospital incorporates all of the foregoing allegations as though set forth in full herein.

72. The Defendant possesses monopoly power in the market for emergency medical services in the relevant product and geographic markets identified above.

73. The Defendant has possessed such monopoly power since well before Monroe Hospital's entrance into the market in 2006.

74. Since at least 2006 until the present, the Defendant has willfully maintained, protected and enhanced its monopoly power in the market for emergency medical services in the relevant product and geographic markets identified above by means other than the quality or price of its service or product, its business acumen, or historical accident.

75. Since at least 2006 until the present, the Defendant has willfully maintained, protected and enhanced its monopoly power in the market for emergency medical services in the relevant product and geographic markets identified above by engaging in exclusionary, predatory and unjustifiable conduct.

76. The Defendant's monopolization of the market for emergency medical services in the relevant product and geographic markets identified above has harmed competition and has caused antitrust injury to Monroe Hospital.

77. The Defendant's monopolization of the market for emergency medical services in the relevant product and geographic markets identified above is ongoing and there is a substantial likelihood that it will continue, and in the absence of injunctive relief Defendant's conduct will continue to harm competition and cause antitrust injury to Monroe Hospital in the form of lost revenue.

78. The Defendant's conduct described herein is in violation of 15 U.S.C.§ 2.

79. Pursuant to 15 U.S.C. § 15, Monroe Hospital is entitled to relief in the form of a judgment against the Defendant in the amount of three times its actual damages caused by the Defendant's violation of 15 U.S.C.§2, costs of suit and an award of attorneys' fees.

80. Pursuant to 15 U.S.C. § 26, Monroe Hospital is entitled to injunctive relief in the form of a judgment against the Defendant preventing the Defendant from continuing to violate the antitrust laws as described herein.

## COUNT II: VIOLATION OF STATE ANTITRUST LAWS

81. Monroe Hospital incorporates all of the foregoing allegations as though set forth in full herein.

82. The conduct of the Defendant described herein constitutes a past, current and ongoing violation of Ind. Code § 24-1-2-2.

83. Pursuant to Ind. Code § 24-1-2-7, Monroe Hospital is entitled to relief in the form of a judgment against the Defendant in the amount of three times its actual damages caused by the Defendant's violation of Ind. Code 24-1-2-2, costs of suit and an award of attorneys' fees

84. Because the Defendant's monopolization of the market for emergency medical services in the relevant product and geographic markets identified above is ongoing and there is a substantial likelihood that it will continue, and in the absence of injunctive relief Defendant's conduct will continue to harm competition and cause antitrust injury to Monroe Hospital in the form of lost revenue, a remedy at law will be inadequate to protect Monroe Hospital from future harm.

85. As a matter of equity, Monroe Hospital is entitled to injunctive relief in the form of a judgment against the Defendant preventing the Defendant from continuing to violate the state antitrust laws as described herein.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein, the Plaintiff, Prime Healthcare Services – Monroe, LLC, d/b/a Monroe Hospital requests the entry of judgment against Indiana University Health Bloomington, Inc.:

A. For three times compensatory damages to the Plaintiff for the Defendant's violations of the federal and state antitrust laws;

B. For prejudgment and post-judgment interest to the Plaintiff;

C. For injunctive relief in favor of the Plaintiff preventing the Defendant from continuing to violate the federal and state antitrust laws as described herein;

D. For attorneys' fees and costs of suit; and

E. For such other legal or equitable relief as this Court deems proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Dated: January 4, 2016　　　　　　　　　Respectfully submitted,

*/s/ Irwin B. Levin*
Irwin B. Levin, No. 8786-49
Scott D. Gilchrist, No. 16720-53
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
ilevin@cohenandmalad.com
sgilchrist@cohenandmalad.com

*Counsel for Plaintiff Prime Healthcare Services – Monroe, LLC*