**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| PRIME HEALTHCARE SERVICES – MONROE, LLC, d/b/a MONROE HOSPITAL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No. 1:16-cv-0003 RLY-DKL |
| INDIANA UNIVERSITY HEALTH BLOOMINGTON, INC., d/b/a IU HEALTH BLOOMINGTON HOSPITAL and d/b/a IU HEALTH BLOOMINGTON HOSPITAL EMERGENCY MEDICAL TRANSPORT SERVICES, | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT IU HEALTH BLOOMINGTON'S**
**MOTION TO DISMISS PLAINTIFF MONROE HOSPITAL'S COMPLAINT**

Unable to compete for patients because of its own quality and financial problems, Monroe Hospital desperately resorts to the antitrust laws and claims that IU Health Bloomington leveraged its lawful monopoly in the emergency transportation services market to obtain an unlawful monopoly in the market for emergency medical services ("EMS"). IU Health Bloomington demonstrated in its moving brief that Monroe Hospital's "monopoly leveraging" theory does not pass muster. Monroe Hospital has now retreated and relies on generic and outdated characterizations of Section 2's exclusionary conduct requirement. Monroe Hospital's attempt to ignore the Supreme Court's modern characterization of the exclusionary conduct requirement is unavailing, and its failure to allege facts that fall within a recognized category of exclusionary conduct is fatal to its claims.

Monroe Hospital's claims also fail because IU Health Bloomington is immune from federal and state antitrust liability. The anticompetitive conduct alleged by Monroe Hospital, even if true, is clearly articulated and supervised by the State of Indiana. Indiana's policymakers and legislators understand that ambulance providers and emergency departments should be more concerned about doing what's best for emergency patients than preserving competition. Any alleged monopolization in the emergency medical services market is the logical and foreseeable result of Indiana's policy of allowing municipally-created ambulance monopolies to create their own protocols addressing how to resolve these life and death decisions.

This Court should dismiss with prejudice this action on both independent and equal grounds.

## ARGUMENT

### I. Monroe Hospital Has Failed to Allege Exclusionary Conduct.

In order to bring a monopolization claim under Section 2 of the Sherman Act, Monroe Hospital admits it must sufficiently allege that IU Health Bloomington engaged in "exclusionary" conduct. (Response Br., at 9.) However, instead of directly addressing IU Health Bloomington's argument that the weight of modern authority sets a high bar for such conduct, Monroe Hospital relies on outdated generalizations about the breadth of the requirement and cites cases in which the conduct at issue is not remotely comparable to the conduct alleged in the Complaint. In so doing, Monroe Hospital has ignored modern antitrust jurisprudence, where the Supreme Court and the Seventh Circuit – addressing allegations that are similar to those at issue here – have set high bars for plaintiffs seeking to allege exclusionary conduct. And Monroe Hospital simply is unable to overcome these high bars.

### *A. Modern case authority supports a narrowing view of the exclusionary conduct requirement.*

Monroe Hospital's response relies on vague and outdated articulations of the exclusionary conduct requirement. (Response Br., at 9.) For example, Monroe Hospital relies heavily on the Supreme Court's decision in *United States v. Grinnell*, where the Court determined that the defendant first unlawfully achieved its monopoly in the primary market (whereas Monroe Hospital admits IU Health Bloomington has a lawful emergency transportation services monopoly) and then engaged in exclusionary conduct by unlawful market allocation and pricing practices. 384 U.S. 563, 576 (1966). The conduct in *Grinnell* constituted independent *per se* antitrust violations under Section 1 of the Sherman Act. *Id.* Equally important, however, is that the Court's exclusionary conduct jurisprudence has evolved significantly in the nearly fifty years since *Grinnell* was decided. While *Grinnell*'s admonition against the "willful acquisition or maintenance of [monopoly] power," *id.* at 570-71, may be helpful in the abstract, modern authority provides far greater clarity about what actions do – and do not – constitute actionable exclusionary conduct under the Sherman Act.

Until the 1980s, the Supreme Court was preoccupied with market power and the perceived danger that large firms would dominate industry.[1] But today the Court takes a tailored approach to exclusionary conduct so as not to quash procompetitive business practices. For

[1] During this period, courts routinely slighted monopolists or large businesses' efficiency rationales for challenged behavior, revealing an implicit suspicion that superior performance could never lead to market dominance. *See, e.g.*, *United States v. Aluminum Co. of Am. (Alcoa)*, 148 F.2d 416, 429-30 (2d Cir. 1945) (holding that the conduct element of a monopolization claim was satisfied where monopoly was the probable result of a defendant's actions); *Utah Pie Co. v. Cont'l Banking Co.*, 386 U.S. 685, 702-03 (1967) (condemning national monopolist's use of localized pricing cuts to compete with leading local producer); William E. Kovacic and Carl Shapiro, *Antitrust Policy: A Century of Economic and Legal Thinking*, 14 J. ECON. PERSPECTIVES 43, 49-52 (Winter 2000) (noting that "[f]ew decisions of this era [1936-1972] command praise today") (attached as Exhibit A).

example, more recent Supreme Court cases, such as the *Trinko* and *Aspen Skiing* decisions cited in IU Health Bloomington's opening brief, demonstrate that the Court has softened its older view that *any* conduct that confers monopoly power on a firm or otherwise enhances market power at a competitor's expense necessarily satisfies the exclusionary conduct requirement. *See Verizon Commnc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (noting that the facts of *Aspen Skiing* represented the "outer boundary of Section 2 liability"); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605-09 (1985) (holding that a firm that terminated collaborative relationship with competitor and completely foreclosed competitor from the market for no apparent procompetitive reason engaged in exclusionary conduct); *see also Pac. Bell Tel. Co. v. linkLine Commc'ns*, 555 U.S. 438, 451 (2009) (holding that internet service providers failed to allege that incumbent telephone companies which owned infrastructure and facilities needed to provide subscriber lines had engaged in anticompetitive predatory pricing).

Under current Supreme Court jurisprudence, the Court starts with the assumption that "the Sherman Act 'does not restrict the long recognized right of a trader or manufacturer . . . freely to exercise his own independent discretion as to parties with whom he will deal.'" *Trinko*, 540 U.S. at 408 (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). Only where a plaintiff alleges that a defendant sacrifices short-term profits to starve a competitor out of the market, or otherwise takes actions that are inconsistent with its business interests, have modern courts found that a complaint properly alleges exclusionary conduct. *See, e.g.*, *Aspen Skiing*, 472 U.S. at 605 ("[i]f a firm has been attempting to exclude rivals on some basis other than efficiency, it is fair to characterize its behavior as predatory") (citations omitted)); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 675 (D.C. Cir. 2005) ("in order to prevail . . . [plaintiff] will have to prove [defendant's] refusal to deal caused [defendant] short-term

economic loss"). Courts apply this exacting analysis to exclusionary conduct allegations in order to minimize the likelihood that the antitrust laws will unnecessarily cool competition among competitors. *See, e.g.*, *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The [Sherman Act] directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition.").

In recent decades, courts have deliberately attempted to identify and categorize conduct that is "exclusionary" and distinguish it from conduct that cannot support a Section 2 claim. *See Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 397-98 (7th Cir. 2000) (noting that "unilateral conduct must be approached with the utmost caution, lest the law forbid desirable, robust competition"). In *Goldwasser*, the Seventh Circuit noted that a defendant's violation of the Telecommunications Act did not, in itself, constitute exclusionary conduct because "the [Act] imposes duties on the [defendants] that are not found in the antitrust laws." *Id.* at 397-402 (rejecting plaintiffs' antitrust theory of exclusionary conduct because its antitrust claim was inextricably linked to other claims). Simply put, the fact that a monopolist's conduct may have violated some other law does not, by necessity, provide a sufficient basis for a Section 2 claim. *See also Trinko*, 540 U.S. at 406 (noting that a statutory duty does "not automatically lead to the conclusion [that it] can be enforced by means of an antitrust claim").

Similarly, the core allegation of Monroe Hospital's Complaint – namely, that IU Health Bloomington ignored it obligations under the emergency transportation protocol and brought too many patients to its own facility – does not, even if true, constitute an independent antitrust violation. As the Seventh Circuit explained in *Goldwasser*, a plaintiff cannot reframe a claim as a Section 2 antitrust violation without making allegations that *independently* rise to the level of exclusionary conduct. Monroe Hospital has failed to satisfy that pleading obligation here. Other

than citing vague and outdated articulations of the exclusionary conduct requirement, it fails to allege or explain, under Supreme Court precedent, how IU Health Bloomington's actions are anticompetitive.

### *B. Authority cited by Monroe Hospital supports a limited view of the exclusionary conduct requirement.*

Despite heavily relying on outdated authority, Monroe Hospital cites other, more recent, cases which support IU Health Bloomington's view of the exclusionary conduct requirement. For example, in *Lerma v. Univision Commc'ns, Inc.*, plaintiff brought an antitrust lawsuit against a television programmer, claiming that the programmer's switch from over-air broadcasting to cable feed would dramatically increase plaintiff's advertising costs. 52 F. Supp. 2d 1011 (E.D. Wis. 1999). Citing *Aspen Skiing* and a monopolist's general right to refuse to deal in a marketplace, the district court focused on the fact that the programmer's decision to exit the free over-air broadcasting market did not alter the competitive landscape because there had not previously been competition between itself and the plaintiff. *Id.* at 1022-23. Unlike *Aspen Skiing*, where the defendant eliminated a long-standing, profitable relationship between the parties, the monopolist programmer in *Lerma* had no duty to protect plaintiff's low advertising costs by indefinitely broadcasting over free airwaves. *Id.* at 1024.

Significantly, in **every case** cited in Monroe Hospital's brief where the court held that the plaintiff properly alleged exclusionary conduct, the alleged conduct fit squarely into a legally cognizable category of exclusionary conduct. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 483-86 (1992) (tying); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) (anticompetitive litigation); *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176-78 (1965) (fraudulently obtaining a patent); *Covad Commc'ns Co.*, 398 F.3d at 675-76 (refusal to deal and anticompetitive litigation); *Caribbean Broad. Sys.,*

*Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998) (denial of access to an essential facility); *Mittal Steel USA, Inc. v. Praxair, Inc.*, No. 2:06-cv-299, 2006 WL 3833351, *2 (N.D. Ind. Dec. 5, 2006) (loyalty discounts).[2] Unlike Monroe Hospital, these courts did not rely on vague generalizations about the exclusionary conduct requirement, but considered whether the alleged conduct fit into a defined category.

By contrast, Monroe Hospital asks this Court to deny IU Health Bloomington's Motion on the basis that the alleged conduct is *generally* anticompetitive. (Response Br., at 10.) But the law, as it has developed over the last fifty years and established by the Supreme Court, requires Monroe Hospital to allege conduct that is recognized as "exclusionary" under current Section 2 jurisprudence. If the alleged conduct does not constitute "monopoly leveraging" or an unlawful "refusal to deal" – and it does not as IU Health Bloomington has explained and Monroe Hospital now concedes, (*see* Response Br., at 16-17) – its claim must be dismissed.

***C. "Monopoly leveraging" is not a freestanding theory of exclusionary conduct.***

Monroe Hospital is correct that the Supreme Court in *Trinko* did not resolve whether "monopoly leveraging" could ever be a recognized theory of exclusionary conduct. (Response Br., at 16.) But it did recognize that even if monopoly leveraging were ever a proper basis for a monopolization claim, there also would need to be independent allegations that the manner of leveraging the preexisting monopoly was itself anticompetitive. *Trinko*, 540 U.S. at 416 n.4.

[2] As IU Health Bloomington explained in its moving brief, the allegations in Monroe Hospital's Complaint most closely resemble a monopoly leveraging or refusal to deal claim. (Mot. Br., at 11-14.) While the courts have defined other categories of exclusionary conduct, none of those categories is relevant here. *See Acquiring, Enhancing, or Maintaining Monopoly Power through Exclusionary Conduct*, *in* 1 ANTITRUST LAW DEVELOPMENTS 240-304 (7th ed. 2012) (detailing the various categories of exclusionary conduct that have been recognized by the courts) (attached as Exhibit B).

*Schor v. Abbot Labs.* is a perfect example of how the Seventh Circuit has applied *Trinko* to claims of monopoly leveraging. In *Schor*, the court held that "free-standing" monopoly leveraging is not exclusionary conduct, at least in the absence of tying, exclusive dealing, or a refusal to deal. 457 F.3d 608, 611 (7th Cir. 2006). Because plaintiff's theory in that case was limited to allegations that the defendant leveraged its market power in one market to monopolize another, and there were no other allegations of exclusionary conduct, the court dismissed the plaintiff's complaint. *Id.* at 610-12. Monroe Hospital's Complaint suffers from the same fatal deficiency.

* * * * *

The crux of Monroe Hospital's Complaint is that IU Health Bloomington "abuse[d] and leverage[d] [its] municipally-granted monopoly . . . to unlawfully acquire, protect and enhance a long-standing monopoly in the market for emergency medical services." (Comp. ¶ 1.) As noted above, Monroe Hospital has not alleged any legally cognizable theory of independent exclusionary conduct – be it a refusal to deal or some other recognized category. Furthermore, Monroe Hospital's recent reorganization[3] indicates that it has historically been unable to compete for patients. For these reasons, Monroe Hospital has failed to allege the exclusionary conduct element of a Section 2 monopolization claim, and its Complaint must be dismissed.

## II. IU Health Bloomington is Immune from Federal Antitrust Liability.

Indiana understands that speedily delivering ambulance patients to the "nearest appropriate hospital" is more important than preserving competition. This is why Indiana has clearly established and actively supervises the very conduct alleged by Monroe Hospital.

[3] *See In re Monroe Hospital, LLC*, No. 14-07417, 2014 WL 7895144 (Bankr. S.D. Ind. Dec. 30, 2014) (Chapter 11 bankruptcy order approving the sale of substantially all of Monroe Hospital's assets to Prime Healthcare Services Monroe LLC).

Accordingly, IU Health Bloomington is immune from antitrust liability. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 42 (1985) (applying state action immunity to active market participants who (1) operate under clearly articulated policies and (2) under the state's active supervision). And because Monroe Hospital cannot amend its Complaint to state otherwise, this Court should dismiss its Complaint with prejudice.

***A. IU Health Bloomington's Exhibits are Appropriate for Judicial Notice.***

As a preliminary matter, Monroe Hospital argues that all the documents attached in IU Health Bloomington's motion are ineligible for judicial notice because they are not central to the Complaint. (Response Br., at 18-19.) But Monroe Hospital misunderstands that this Court may take judicial notice of a document regardless of its centrality: "The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As IU Health Bloomington explained in its opening brief, all of IU Health Bloomington's documents fit this description and have been routinely noted by courts on motions to dismiss. (Mot. Br., at 5-8 (citing cases).)

Independent of Rule 201(b)(2), the Court also may consider IU Health Bloomington's Contract with Monroe County (Doc. No. 17-2), because it is, in fact, central to the Complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The contract establishes a key premise to Monroe's allegations, namely that IU Health Bloomington has a *municipally-granted* monopoly in the emergency medical transportation market. The Complaint refers to this contract explicitly, (Comp. ¶ 55), and it assumes that the contract is valid and enforceable by referring to IU Health Bloomington's "municipally-granted monopoly." (*See* Comp. ¶¶ 1, 7.) This contract is essential to the resolution of this lawsuit because it establishes the foundation of Monroe

Hospital's monopolization theory and confirms that IU Health Bloomington's alleged anticompetitive conduct derives from Monroe County's state-given authority.

Moreover, all of the documents in IU Health Bloomington's exhibits are authentic, including the Ambulance Advisory Reports. The declaration (Doc. No. 17-1) offered under penalty of perjury is sufficient to authenticate them. *See Plumbers & Pipefitters Local Union v. Zimmer*, 673 F. Supp. 2d 718, 736 n.18 (S.D. Ind. 2009) *aff'd sub nom. Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952 (7th Cir. 2012) (granting motion to dismiss and taking judicial notice of SEC filings, website pages, and an FDA investigations operations manual, all supported by attorney declaration).

***B. Indiana has clearly articulated the anticompetitive activity alleged by Monroe Hospital as state policy.***

Monroe Hospital argues that it is nearly impossible for active market participants like IU Health Bloomington to enjoy state action immunity based on a fundamental misunderstanding of the clear articulation prong. It argues that Indiana must *expressly* authorize monopolization of the medical *services* market, and that any regulations of the medical *transportation* market are irrelevant. (*See* Response Br., 21-23) (stating that the clear articulation prong "has been interpreted to require more than mere authorization to act" or mere "[p]ermission to act").) The U.S. Supreme Court rejected this kind of formalism decades ago.

Instead, states confer antitrust immunity on all anticompetitive conduct that is foreseeable, implicit, inherent, logical, or the ordinary result of clearly articulated state policy. *See N. Carolina State Bd. of Dental Exam'rs v. F.T.C.*, 135 S. Ct. 1101, 1112 (2015) (stating the "clear articulation requirement is satisfied where the displacement of competition is the *inherent, logical, or ordinary* result of the exercise of authority delegated by the state legislature. In that scenario, the State must have *foreseen* and *implicitly* endorsed the anticompetitive effects as

consistent with its policy goals." (emphasis added)); *Town of Hallie*, 471 U.S. at 42 (finding clear articulation of anticompetitive conduct that is "a *foreseeable* result" of a state policy (emphasis added)); *Campbell v. City of Chicago*, 823 F.2d 1182, 1184 (7th Cir. 1987) (citing *Town of Hallie*) ("The state legislature *does not have to explicitly authorize* the anticompetitive conduct so long as the anticompetitive effects would *logically* result from" the state policy (emphasis added)); *LaSalle Nat. Bank of Chicago v. DuPage Cty.*, 777 F.2d 377, 381 (7th Cir. 1985) (citing *Town of Hallie*) ("the state *need not specifically authorize conduct* with anticompetitive effects. It is sufficient that anticompetitive effects are a *foreseeable* consequence of engaging in the authorized activity." (emphasis added)).

IU Health Bloomington has proven that the activity alleged by Monroe Hospital, even if true,[4] is the logical and foreseeable result of state policy. Indiana *expressly* allows ambulance monopolies to set their transportation protocols. Ind. Code § 16-31-5-1(1) to (3); 10-14-3-17(j)(1), (2)(C) (allowing counties to contract with ambulance providers); 836 Ind. Admin. Code 1-2.1-4(b) to (d) (requiring transportation of the patient "to the nearest appropriate hospital as determined by the provider's protocols"); 836 Ind. Admin. Code 1-2.1-3(5) (defining EMS transportation protocol as "a written guidance, prepared by the provider's medical director"). The inherent, logical, and ordinary result of this policy may be that IU Health Bloomington decides that Monroe Hospital is not "the nearest appropriate hospital" and delivers the vast

[4] Monroe Hospital distorts IU Health Bloomington's brief to suggest that IU Health Bloomington has conceded that it has violated its transportation protocol in disregard of patient choice. (Response Br., at 23.) IU Health Bloomington said precisely the opposite and argued that Monroe Hospital has not met *Twombly*'s facial plausibility standard because the Complaint asserts only "conclusory allegations" that "do not describe any individual incidents" of misconduct. (Mot. Br., at 4, 16) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 545 (2007).) IU Health Bloomington has merely assumed that the Complaint's allegations are true for purposes of this Motion.

majority of its ambulance patients to IU Health Bloomington. *See* 836 Ind. Admin. Code 1-2.1-4(b)-(d). It takes only one more step to see that Indiana's policy will inherently, logically, and ordinarily result in a competitive advantage to the hospital that receives these ambulance patients.

Monroe Hospital attempts to ignore these logical and foreseeable anticompetitive effects by erecting an artificial wall between Indiana's regulation of medical *transportation* and regulation of medical *services*. (Response Br., at 22-23.) Once again, Monroe Hospital's formalism belies both common sense and the law. All Indiana ambulances have a destination – they must deliver their patients to hospitals so they can receive medical *services*. This is why Indiana regulations have a whole section devoted to "Transportation *destination* procedures." 836 Ind. Admin. Code 1-2.1-4. Indiana understands the medical transportation and services markets are inherently connected and that regulations of ambulances will have logical and foreseeable anticompetitive effects on the hospitals to which they deliver patients.

Even if IU Health Bloomington violated its own protocols (which it assumes without conceding for purposes of this Motion), it still has satisfied the clear articulation prong. To understand why, this Court must appreciate the critical difference between a *state's clear articulation* of its policy, on the one hand, and a *state's active supervision* of that policy, on the other. Once a defendant identifies an anticompetitive policy, the clear articulation prong is satisfied. No questions asked. Any deviance from that policy is a question of active supervision, not clear articulation.

In essence, Monroe Hospital is attempting to conflate the two state action prongs by asking this Court to equate Indiana emergency policy with IU Health Bloomington's alleged wrongdoing. That is not how the state action doctrine works. If it did, then the active supervision

prong would be superfluous. If IU Health Bloomington has indeed shirked its own protocol (which it assumes for purposes of this Motion), then Indiana will intervene to vindicate its policy. "The Federal courts must not be burdened by complex antitrust litigation when the alleged illegal conduct is mandated and supervised by the state." *Marrese v. Interqual, Inc.*, 748 F.2d 373, 393 (7th Cir. 1984), *abrogated on other grounds by Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774 (7th Cir. 1994).

Finally, Monroe Hospital relies extensively on an unpublished opinion from this Court, but it is clearly distinguishable. *Kentuckiana Med. Ctr. LLC v. Clark County*, No. 4:05-CV-0086, 2006 WL 146625 (S.D. Ind. Jan. 18, 2006). The moratorium on all competition from new hospitals in *Kentuckiana* is incomparable to IU Health Bloomington's state-sanctioned monopoly ambulance service. IU Health Bloomington has every right – under clear Indiana law – to set its own transportation protocols, and this right may indeed result in delivering fewer patients to Monroe Hospital than to IU Health Bloomington. This is the clear articulation that was lacking in *Kentuckiana*, but is present in this case.

* * * * *

Indiana has decided that patient health and safety is more important than competition in both the medical transportation and emergency medical services markets. Any displacement of competition in the medical services market is the "inherent, logical, and ordinary result" of Indiana's decision to let ambulance services set their own delivery protocol for determining the "nearest appropriate hospital."

### *C. Indiana actively supervises IU Health Bloomington's alleged anticompetitive activity.*

Regarding the second prong of the state action doctrine, active supervision, Monroe Hospital makes one argument: Indiana does not actively supervise IU Health Bloomington's anticompetitive activity because Indiana has no anticompetitive policy to supervise. (Response Br., at 25.) This means that if IU Health Bloomington is right and Indiana has clearly articulated the alleged anticompetitive activity (which it has), then Monroe Hospital has waived any independent argument on the active supervision element. In other words, for purposes of this motion the state action issue now turns exclusively on the Court's resolution of the clear articulation prong.

**III. IU Health Bloomington is Immune from State Antitrust Liability.**

Monroe Hospital argues that IU Health Bloomington is not entitled to state antitrust immunity because no Indiana case is on all fours with this one. Accordingly, Monroe Hospital effectively says this Court should limit *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336 (Ind. 2005), to its facts. But neither *Natare Corp.* nor any other opinion *excludes* private market participants from Indiana antitrust immunity, which hinges "only" on "the intention of the state legislature to impose or withhold liability." *Id.* at 348. As explained above and in its moving brief, Indiana has plainly authorized the anticompetitive activity alleged in this case.

**IV. Monroe Hospital's Complaint Should be Dismissed with Prejudice.**

IU Health Bloomington respectfully submits that the Court should dismiss this Complaint with prejudice and Monroe Hospital should not be afforded the opportunity to amend its Complaint.

The Court should withhold leave for Monroe Hospital to file an amended complaint because any amendment would be futile. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,

665 F.3d 930, 943 (7th Cir. 2012) ("it is well settled that a district court may refuse leave to amend where amendment would be futile"). No additional allegations by Monroe Hospital will change the fact that IU Health Bloomington's conduct is immune from antitrust liability. *Cf. Thurman v. Lawrence*, No. 1:15-cv-01085, 2015 WL 6142819, at *2 (S.D. Ind. Oct. 18. 2015) (holding that "[n]o conceivable amendment to the complaint would alter the fate of [plaintiff's] claims" against judicial officers, whose alleged actions were subject to judicial immunity).

Moreover, Monroe Hospital already forfeited its automatic right to amend the Complaint as a matter of course when it failed to file an amended complaint within 21 days after IU Health Bloomington filed its Motion on February 26, 2016. FED. R. CIV. P. 15(a)(1) (providing that a plaintiff may amend its complaint as a matter of course "within . . . 21 days after service of a motion under Rule 12(b), (e), or (f)"). As the Advisory Committee explains, the Rule "force[s] the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." FED. R. CIV. P. 15 advisory committee notes (2009).[5]

For those reasons, Monroe Hospital's Complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, IU Health Bloomington respectfully requests that the Court dismiss Monroe Hospital's Complaint with prejudice, and grant all other just and proper relief.

[5] While the Court granted Monroe Hospital's motion to extend its deadline to respond to IU Health Bloomington's Motion during the March 10, 2016 pre-trial conference, Monroe Hospital never sought an extension of time to file an amended complaint, and the deadline to file the amended complaint – March 18, 2016 – has now expired. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 522-23 (7th Cir. 2015) (by failing to amend her complaint within 21 days of the defendant's motion to dismiss, plaintiff lost her automatic right to amend her complaint as a matter of course).

Dated: April 26, 2016

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

/s/ Ryan M. Hurley

Kathy L. Osborn (No. 21927-53)
Ryan M. Hurley (No. 24956-49)
Anna M. Konradi (No. 30714-06)
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
T: (317) 237-0300
F: (317) 237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com
anna.konradi@FaegreBD.com

*Attorneys for Defendant Indiana University Health Bloomington, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Irwin B. Levin
Scott D. Gilchrist
Michael W. McBride
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
T: (317) 636-6481
F: (317) 636-2593
ilevin@cohenandmalad.com
sgilchrist@cohenandmalad.com
mmcbride@cohenandmalad.com

/s/ Ryan M. Hurley