UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PRIME HEALTHCARE SERVICES-<br>MONROE, LLC, doing business as<br>MONROE HOSPITAL,<br><br>          Plaintiff,<br><br>    vs.<br><br>INDIANA UNIVERSITY HEALTH<br>BLOOMINGTON, INC., doing business as<br>IU HEALTH BLOOMINGTON<br>HOSPITAL EMERGENCY MEDICAL<br>TRANSPORT SERVICES, doing business<br>as IU HEALTH BLOOMINGTON<br>HOSPITAL,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:16-cv-00003-RLY-DKL |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Prime Healthcare Services—Monroe, LLC, d/b/a Monroe Hospital

("Monroe Hospital"), filed this antitrust action, alleging violation of both federal and

state laws, against Defendant, Indiana University Health Bloomington, Inc., d/b/a IU

Health Bloomington Hospital Emergency Medical Transport Services, d/b/a IU Health

Bloomington Hospital ("IU Health Bloomington"). This matter now comes before the

court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). For the reasons set forth below, the court **GRANTS** Defendant's motion as to

Count I and orders the Plaintiff to show cause why Count II should not be dismissed for

lack of subject matter jurisdiction by **Friday, October 28, 2016**.

## I.   Background

Historically, IU Health Bloomington's predecessor, Bloomington Hospital, was the only provider of emergency medical services and, through its ambulance service, the only provider of emergency medical transportation services in Monroe County and adjacent locations. (Docket No. 1, ¶ 2). In 2006, Monroe Hospital began operations at a location in Bloomington only a few miles from Bloomington Hospital. (*Id.* ¶ 4). In 2011, a series of acquisitions were completed resulting in Bloomington Hospital now being known as IU Health Bloomington Hospital and its ambulance service as IU Health Bloomington Hospital Emergency Medical Transport Services ("IU Ambulance"). (*Id.* ¶¶ 3-4). Throughout this time, Monroe County and the City of Bloomington had entered into exclusive agreements, pursuant to Ind. Code § 16-31-5-1, which permits municipalities to contract for the provision of emergency medical services, designating IU Ambulance and its predecessor as the providers of emergency medical transportation services in Monroe County. (*Id.* ¶ 55).

Monroe Hospital accuses IU Health Bloomington of unlawfully abusing and leveraging a municipally-granted monopoly, in the provision of emergency medical transportation services in Monroe County. (*Id.* ¶ 1). The result, according to Monroe Hospital, is that IU Health Bloomington has willfully maintained, protected, and enhanced its monopoly power in the market for emergency medical services by engaging in exclusionary, predatory, and unjustifiable conduct, a violation of federal and Indiana

antitrust law. (*Id.* ¶ 75). Monroe Hospital brings its action pursuant to 15 U.S.C. § 2

(Section 2 of the Sherman Act) (Count I) and Ind. Code § 24-1-2-2 (Count II).[1]

## II.  Extrinsic Materials

As an initial matter, IU Health Bloomington submits eight exhibits for the court to

consider, all of which refer to facts and evidence outside the pleadings. Documents that

are (1) referred to in a complaint, (2) are authentic, and (3) are central to a plaintiff's

claim can be considered in a Rule 12(b)(6) motion to dismiss without converting it into a

motion for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)

(citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). If those requirements are not

satisfied, the district court may also take judicial notice of matters of public record

without converting a 12(b)(6) motion into a motion for summary judgment. *U.S. v. Wood*,

925 F.2d 1580, 1582 (7th Cir. 1991). Courts have considered the public record to include

information available on a government website and proceedings of another court or

agency. *Henson v. CSC Credit Services, et al.*, 29 F.3d 280, 284 (7th Cir. 1994); *see also*

FED. R. EVID. 201; *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (holding

judicial notice of information from government's official website is proper); *Opoka v.*

*INS*, 94 F.3d 392, 394 (7th Cir. 1996) (holding judicial notice of proceedings of another

court or agency is proper).

---

[1] Indiana courts interpret Indiana's monopoly law in harmony with § 2 of the Sherman Antitrust Act. *See* *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 594 (Ind. Ct. App. 2002) ("The Indiana Act was modeled after section two of the Sherman Antitrust Act, 15 U.S.C. 2, . . . and has been interpreted consistent with the federal law interpreting the Federal Act."). Thus, the federal authority used throughout this opinion apply equally to the state antitrust count, unless specified otherwise, and the resulting relief from this opinion will be applicable to both counts.

IU Health Bloomington asserts that these materials are appropriate for the court to consider in a Rule 12(b)(6) motion because they are either referred to by Monroe Hospital in the Complaint and are central to the claims, or they are public record. (Docket No. 17 at ECF p. 7). Monroe Hospital disagrees, arguing: (1) they are central to IU Health Bloomington's state action doctrine immunity argument, not to Plaintiff's Complaint; (2) they do not include materials that are subject to judicial notice; and (3) Exhibits 1 and 6 are not self-authenticating. (Docket No. 23 at ECF p. 18-20).

The eight exhibits attached to IU Health Bloomington's Brief in Support of its Motion to Dismiss can be divided into two groups, one group where judicial notice is proper and one group where it is not. Exhibits 2 and 3 are administrative orders issued by the Emergency Medical Services Commission of the Indiana Department of Homeland Security. These agency proceedings are deemed public record. *See Opoka*, 94 F.3d at 394. Exhibits 4, 5, 7, and 8 include information that is available through either Monroe County's webpage or the State of Indiana's webpage. This information from government websites is also public record, properly submitted for judicial notice. *See Denius*, 330 F.3d at 926-27. For purposes of this motion, the court will consider these documents.

However, Exhibit 1, an ambulance agreement between Monroe County and Bloomington Hospital, and Exhibit 6, Monroe County Ambulance Advisory Board Meeting Minutes, cannot be deemed public records based on the information provided by IU Health Bloomington. There was no information suggesting that the public has unqualified access to the documents via a website or otherwise. *See Travelers Cas. and Sur. Co. of Am. V. Consol. City of Indianapolis, Indiana*, No. 1:13-cv-01276-MJD-TWP,

2014 WL 5509312, at *2, n.2 (S.D. Ind. Oct. 21, 2014) (taking judicial notice of meeting

minutes of the Board of Public Works as they are available on a government website);

s*ee also Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1197

(3d Cir. 1993) (holding document is not a public record if the public does not have

unqualified access to it). Here, IU Health Bloomington provides insufficient information

to qualify Exhibits 1 or 6 as public records that are appropriate for judicial notice.

     Finally, neither Exhibit 1 or 6 meet the alternative set of requirements to be

considered by the court for purposes of the current motion (i.e., neither are referred to in

the Complaint, are authentic, and are central to a plaintiff's claim). *See Hecker*, 556 F.3d

at 582. Exhibit 1, the ambulance agreement, is referenced in Monroe Hospital's

Complaint and is, arguably, central to its claim that the "municipally-granted monopoly"

is the foundation to IU Health Bloomington's exclusionary conduct. (*See* Compl. ¶¶ 1, 2,

7, 55). However, the agreement is not properly authenticated. The declaration submitted

by Attorney Hurley is insufficient to properly authenticate Exhibit 1 because the

declarant provides no support as to his personal knowledge of the document and the facts

do not provide otherwise. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244,

1248 (7th Cir. 1994) (finding it adequate personal knowledge for the purposes of

authentication when affiant, as vice president, stated that he was charged with

administering the agreement and subsequent amendments within his affidavit); *see also*

*Romanelli v. Suliene*, No. 07-C-19-C, 2007 WL 5490671, at *2 (W.D. Wis. May 16,

2007) ("[D]ocuments must be authenticated. . . [by an] affidavit of someone who testifies

on personal knowledge . . ."). Exhibit 6 is not referred to in the Complaint or properly

authenticated. Therefore, neither Exhibit 1 nor Exhibit 6 have been considered for purposes of this motion.

## III.   Motion to Dismiss Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). The recitation of facts comes, therefore, from Monroe Hospital's Complaint. The "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). S*ee also* Fed. R. Civ. P. 8(a). Stated differently, a complaint must include sufficient facts that "a claim to relief is plausible on its face." *Hecker v. Deere & Co*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted). Finally, the court must not apply a heightened pleading standard in antitrust cases. *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000).

## IV.   Discussion

### A. Exclusionary Conduct

IU Health Bloomington contends that Monroe Hospital has not sufficiently stated a claim for relief as it has not alleged conduct that is considered "exclusionary" under Section 2 of the Sherman Antitrust Act. (Docket No. 17 at ECF p. 8). Section 2 of the

Sherman Act requires two elements to be met: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Grinnell*, 384 U.S. 563, 571 (1966). IU Health Bloomington does not raise arguments under the first element; therefore, the court will limit its discussion to the second element.

The second element is described by courts as "exclusionary," "anticompetitive," or "predatory" conduct. *See, e.g.*, *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011) (quoting *State of Illinois ex rel. Burris v. Panhandle Eastern Pipe Line Co.*, 935 F.2d 1469, 1481 (7th Cir. 1991) ("Section 2 forbids not the intentional pursuit of monopoly power but the employment of unjustifiable means to gain that power.")). To determine whether conduct is exclusionary, a court cannot solely consider the conduct's effect on the competitor, but must also consider the conduct's impact on consumers and whether it has impaired competition in an unnecessarily restrictive way. *Aspen Skiing Co.*, 472 U.S. 585, 605 (1985). "If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as predatory." *Id.* (citing R. Bork, The Antitrust Paradox 160 (1978)).

In Monroe Hospital's Complaint, within a section entitled "Defendant's Exclusionary Conduct," Monroe Hospital alleges that IU Ambulance and its predecessor have been the sole designated providers, pursuant to Ind. Code § 16-31-5-1, of emergency medical transportation services in Monroe County since Monroe Hospital

began operations in 2006. (Compl. ¶ 54, 55). IU Health Bloomington has "continuously and consistently delivered the vast majority [95%] of emergency medical transportation patients" to IU Health Bloomington despite protocols for emergency medical transportation, both as established by law and dictated by the applicable standard of care. (*Id.* ¶ 56, 57). Monroe Hospital has received information that individuals transported by IU Ambulance have been taken to IU Health Bloomington even though they have requested to be transported to Monroe Hospital. (*Id.* ¶ 59). Finally, Monroe Hospital has alleged that this exclusionary conduct constitutes unlawful abuse and leveraging of an existing monopoly, predatory conduct and unjustifiable conduct by Defendant for the purpose of acquiring, protecting and enhancing the monopoly power of IU Health Bloomington in the market for emergency medical services in Monroe County and adjacent locations. (*Id.* ¶ 62).

IU Health Bloomington asserts, overall, that it has no positive duty to assist its competitors. (Docket No. 17 at ECF p. 11). Second, it contends that Monroe Hospital has not alleged actionable exclusionary conduct because the "vague" evidence cited in the Complaint does not meet the Seventh Circuit's "strict view of the exclusionary conduct requirement." (Docket No. 17 at ECF pp. 9, 12-16). This view, IU Health Bloomington contends, includes specific categories of exclusionary conduct that have been recognized by the courts. (Docket No. 17 at ECF p. 11). Finally, it argues that Monroe Hospital's allegations that it engaged in "monopoly leveraging" are not sufficient to state a § 2 Sherman Antitrust Act claim because courts have recognized that monopoly leveraging, absent separate exclusionary conduct, does not satisfy the second element. (Docket No.

17 at ECF pp. 11-14). On the other hand, Monroe Hospital asserts that exclusionary conduct is not categorically limited and its Complaint sets forth sufficient allegations to establish IU Health Bloomington's conduct has impaired competition in an unnecessarily restrictive way. (Docket No. 23 at ECF p. 13-15). Monroe Hospital contends that even if "monopoly leveraging" is not a standalone theory of exclusionary conduct, it has sufficiently alleged other exclusionary conduct to satisfy the second element. (Docket No. 23 at ECF p. 16).

The Seventh Circuit has not explicitly held that "exclusionary conduct" must fit into an established category of anticompetitive conduct. Instead, the appellate court has consistently held that the second element can be met by showing that the monopolist engaged in predatory or anticompetitive conduct of some kind. *See Mercatus Group, LLC*, 641 F.3d at 854; *State of Illinois ex rel. Burris v. Panhandle Eastern Pipe Line Co.*, 935 F.2d 1469, 1481 (7th Cir. 2011); and *Chillicothe Sand & Gravel Co. v. Martin Marietta Corp.*, 615 F.2d 427, 430 (7th Cir. 1980). Therefore, although Monroe Hospital did not specifically classify the alleged conduct in a previously recognized category, this will not foreclose it if this court finds it has otherwise sufficiently pled exclusionary conduct.

While IU Health Bloomington is correct that a monopoly power has no general duty to provide a "fair share" of the market to its competitors, the right to deny access to other entities is not unqualified. *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 379 (7th Cir. 1986). ("[A] monopolist may be guilty of monopolization if it refuses to cooperate with a competitor in circumstances where some

cooperation is indispensable to effective competition."). As cited above, Monroe Hospital
has alleged "[d]espite and contrary to protocols for emergency medical transportation . . .
IU Ambulance and its predecessor have continuously and consistently delivered the vast
majority of emergency medical transportation patients to whom they have provided
services to IU Hospital." (Compl. ¶ 55). The effect is that Monroe Hospital has
information that patients were taken to IU Health Bloomington for treatment instead of
Monroe Hospital in violation of the protocols and against consumer choice. (*Id.* ¶¶ 55,
59). This conduct, particularly given IU Ambulance's exclusive agreement with Monroe
County, is sufficient to state a claim that is plausible on its face. *See Hecker*, 556 F.3d at
580. Monroe Hospital's assertions outline that the IU Ambulance's patient delivery
procedures, which violated protocols, foreclosed competition by Monroe Hospital's
emergency department and displaced consumer choice. These are the necessary
assertions to meet the requirements of element two of a § 2 Sherman Antitrust Act claim.
*See Aspen Skiing Co.*, 472 U.S. at 605 (holding exclusionary conduct must be assessed by
considering the effect of the conduct on the competitor *and* consumers to determine
whether the conduct has impaired competition in an unnecessarily restrictive way).

Finally, although IU Health Bloomington is correct that the Court in *Verizon
Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, stated that monopoly
leveraging "presupposes anticompetitive conduct," it ignores the fact that Monroe
Hospital has set forth additional conduct it purports was anticompetitive. 540 U.S. at 415
n.14. As outlined above, not only has Monroe Hospital made additional assertions of

10

exclusionary conduct, but these assertions meet the requirements of Federal Rule of Civil Procedure Rule 8(a).

### B. State Action Doctrine (Count I)

Next, IU Health Bloomington contends that even if Monroe Hospital properly alleged exclusionary conduct, IU Health Bloomington is immune from federal antitrust liability under the state action doctrine. (Docket No. 17 at ECF p. 17). The "state action doctrine provides an *exemption* from the federal antitrust laws and, if applicable, allows for dismissal of the complaint." *Marrese v. Interqual, Inc.*, 748 F.2d 373, 384 (7th Cir. 1984) (emphasis in original), *abrogated on other grounds by Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 779 (7th Cir. 1994). The state action doctrine seeks to preserve the principles of state sovereignty and federalism without disregarding the procompetitive, free enterprise principles that compose the federal antitrust laws. *Marrese*, 748 F.2d at 386. This doctrine recognizes that in circumstances where sufficient state action is present, there is a reduced "concern that federal policy is being unnecessarily and inappropriately subordinated to state policy." *Id.* at 387 (citing *Bates v. State Bar of Arizona*, 433 U.S. 350, 362 (1977)). The doctrine exempts private entities like IU Health Bloomington from antitrust laws if the alleged anticompetitive activity was (1) "clearly articulated and affirmatively expressed as state policy," and their actions were (2) "actively supervised by the State itself." *Id.* at 386 (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum Inc.*, 445 U.S. 97, 105 (1980)).

The first prong, the clear articulation prong, does not require a state to specifically authorize conduct with anticompetitive effects, so long as those anticompetitive effects

are a foreseeable consequence of engaging in the authorized activity. *LaSalle Nat'l Bank of Chicago v. DuPage Cnty.*, 777 F.2d 377, 381 (7th Cir. 1985); *see also N. Carolina State Bd. Of Dental Exam'rs v. FTC*, ___ U.S. ___, 135 S. Ct. 1101, 1112 (2015) (citation omitted) ("'[T]he State must have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals.'"). The second prong, the active supervision requirement, requires that state officials have the right "'to review particular anticompetitive acts of private parties and disapprove those that fail to accord with the state policy.'" *N. Carolina State Bd. Of Dental Exam'rs*, 135 S. Ct. at 1112. The active supervision requirement stems from the recognition that when "a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State." *Hallie v. Eau Claire*, 471 U.S. 34, 47 (1985). The requirement is intended to ensure that the state action doctrine will shelter only the particular anticompetitive acts of private parties that, in the eyes of the state, actually further state regulatory policies. *Id.* at 46-47. To accomplish this purpose, the active supervision element requires that the State exercise ultimate control over the challenged anticompetitive conduct. *Patrick v. Burget*, 486 U.S. 94, 101 (1988). The mere presence of state involvement or monitoring does not suffice. *Id.*

IU Health Bloomington asserts that these requirements have been met in this case. (Docket No. 17 at ECF pp. 17-27). In regard to the first element, IU Health Bloomington argues Indiana clearly articulated the alleged exclusionary conduct as state policy when it allowed counties to contract for emergency transportation services, and gave ambulance providers the flexibility to set their own emergency transportation protocols. (Docket No.

17 at ECF p. 17). IU Health Bloomington also contends that the second element is met as

Indiana supervises ambulance providers to ensure they comply with regulations,

including the regulation addressing transportation protocols. (Docket No. 17 at ECF p.

17). On the other hand, Monroe Hospital asserts that IU Health Bloomington improperly

conflates the market for emergency medical transportation services and the market for

emergency medical services into a single market allegedly subject to regulation and

supervision. (Docket No. 23 at ECF p. 22). Further, Monroe Hospital argues that Indiana

did not explicitly grant authority for anticompetitive conduct in the emergency medical

*services* market, nor was the anticompetitive conduct foreseeable and implicitly endorsed

by the state. (Docket No. 23 at ECF p. 23). Finally, Monroe Hospital argues that the

anticompetitive impact of IU Health Bloomington's conduct is in the emergency medical

services market, which is not covered by the transportation regulations and therefore not

subject to the supervision that IU Health Bloomington asserts provides it immunity.

(Docket No. 23 at ECF p. 25-26).

 As an initial matter, the court must address Monroe Hospital's contention that IU

Health Bloomington conflates the markets for emergency medical transportation services

and emergency medical services to argue that the state action doctrine applies. In support

of this argument, Monroe Hospital points out that the anticompetitive *impact* is in the

emergency medical services market and, therefore, this is the market the court should be

analyzing for the state action issue. (Docket No. 23 at ECF pp. 25-26). However, the

conduct that Monroe Hospital contends is exclusionary is IU Ambulance's *delivery of*

*patients*, which Monroe Hospital argues is in violation of appropriate protocol. (Compl.

¶¶ 54-62). In fact, Monroe Hospital does not assert any exclusionary conduct in the emergency medical services market, itself, in the Complaint. Instead, only the effect of that conduct occurs in the emergency medical services market. Therefore, the state action doctrine's applicability does depend upon whether the two-prong test outlined above can be met with regard to the emergency medical transportation services, for this is the market where the anticompetitive conduct set forth in Monroe Hospital's Complaint allegedly occurred.

A review of applicable state law is necessary in order to assess the applicability of the state action doctrine to this matter. Title 16, Article 31 of the Indiana Code governs emergency medical services,[2] providing that "the provision of emergency medical services is a matter of vital concern affecting the public health, safety, and welfare of the people of Indiana," I.C. § 16-31-1-1(a), and "an essential purpose of the political subdivisions of the state." I.C. § 16-31-1-2. Pursuant to Ind. Code § 16-31-5-1, the governing body of a city, town, township or county may contract for the provision of emergency medical services. I.C. § 16-31-5-1. This is the very provision used by Monroe County and the City of Bloomington in creating the exclusive contract with IU Ambulance for its emergency medical transportation services. (Compl. ¶ 55). Moreover, the Indiana legislature created "the Indiana emergency medical services commission" ("EMS Commission") to, among other things, "[d]evelop and promote, in cooperation with state, regional, and local public and private organizations, agencies, and persons, a

---

[2] The Indiana Code's use of this phrase includes ambulatory services.

14

statewide program for the provision of [EMS] that must include . . . [p]reparation of state, regional, and local emergency ambulance service plans." I.C. § 16-31-2-7(a)(1)(A). This commission, composed of thirteen members appointed by the governor for four year terms, also provides "consultative services to state, regional, and local organizations and agencies in developing and implementing emergency ambulance service programs." I.C. § 16-31-2-7(a)(1)(B). Finally, it "[a]dopt[s] rules required to implement an approved system of emergency medical services[]" and "concerning triage and transportation protocols for the transportation of trauma patients consistent with the field triage decision scheme of the American College of Surgeons Committee on Trauma." I.C. § 16-31-2-7(a)(3), (4).

The EMS Commission also established "a regulatory plan to ensure that injured patients in the pre-hospital setting are transported to the most appropriate hospital facility within the Indiana state trauma system." 836 Ind. Admin. Code 1-2.1-1. The EMS Commission's transport destination protocol incorporates by reference "Figure 2, Field triage of injured patients-United States 2011," published by the Centers for Disease Control ("CDC"), which is a detailed flow-chart recommending where ambulance providers should take emergency patients in certain situations and includes some instruction on when consumer preference should be considered. (Compl. ¶ 20). *See also* 836 Ind. Admin. Code 1-2.1-6. The EMS Commission regulations further elaborate upon the CDC triage report by requiring the delivery of emergency patients, depending upon the severity of the injuries, to either (1) a trauma center or (2) "the nearest appropriate hospital as determined by the provider's protocols." 836 Ind. Admin. Code 1-2.1-4(b).

15

These provider protocols are defined as "a written guidance, prepared by the provider's medical director, detailing trauma field triage and transport destination procedures that shall be based on the field triage decision scheme." 836 Ind. Admin. Code 1-2.1-3(5). The medical director is an emergency physician that each ambulance provider must appoint to supervise the emergency transportation system. *See* 836 Ind. Admin. Code 1-1-1(35), -2-1(e). In this case, the emergency physician appointed as the IU Ambulance medical director is an IU Health Bloomington physician. (Compl. ¶ 24).

In considering the alleged anticompetitive conduct, the court must first determine whether the aforementioned state legislative acts authorize the challenged conduct and then determine whether anticompetitive effects are a foreseeable result of the authorization. Thereafter, the court will consider whether the State of Indiana "actively supervises" IU Ambulance's delivery of patients to determine if it is in accordance with protocols, both as established by law and as dictated by the applicable standard of care. An affirmative determination to both questions will lead to the conclusion that the state intended the private actor conduct to be exempt from federal antitrust laws.

In regard to the first prong, the "clear articulation prong," this court concludes that the conduct alleged by Monroe Hospital was a foreseeable consequence of engaging in the authorized activity. As outlined above, the State of Indiana authorized contracts such as the one between IU Health Bloomington and Monroe County and the City of Bloomington to exist. *See* I.C. § 16-31-5-1. The Indiana legislature created the EMS Commission, which in turn established "a regulatory plan to ensure that injured patients in the pre-hospital setting are transported to the most appropriate facility within the

16

Indiana trauma system." 836 Ind. Admin. Code 1-2.1-1. The State of Indiana included in this plan that the provider, here IU Ambulance, had authority to develop its own protocols to determine the nearest appropriate hospital. *See* 836 Ind. Admin Code 1-2.1-4(b). Furthermore, the State of Indiana defined these provider protocols as guidance prepared by the provider's medical director, here an IU Health Bloomington physician, which detail the trauma field triage and transport destination procedures to be used by the provider. *See* 836 Ind. Admin. Code 1-2.1-3(5). Combined, these provisions show that the State of Indiana authorized providers to develop their own protocols, so long as they were in accordance with state law and the field triage decision scheme. Moreover, as discussed in more detail in prong two, below, the EMS Commission has authority to review not only the provider developed procedures, but also the provider's execution of its duties to ensure it is in accordance with those procedures. *See* I.C. § 16-31-2-11(a); 836 Ind. Admin. Code 1-2.1-4. Given that the legislature authorized providers to develop their own procedures and created a state supervisory process to review both the providers' procedures and the providers' conduct to carry out that procedure, it is foreseeable that a provider, such as IU Ambulance, could develop procedures or violate procedures it had developed, which resulted in an anticompetitive effect. If such anticompetitive impact was not foreseeable, it is unlikely that the General Assembly would have developed such a comprehensive regulatory plan for State oversight.

Turning to the second prong, the court must consider whether the State of Indiana "actively supervises" IU Ambulance's delivery of patients to determine if it is in accordance with protocols, both as established by law and as dictated by the applicable

17

standard of care. The Indiana statutory scheme provides that the EMS Commission "shall develop procedures for ongoing review of all emergency ambulance services." I.C. § 16-31-2-11(a). The EMS Commission provides supervision over emergency ambulance services and "may review any pre-hospital ambulance rescue report record regarding an emergency patient." I.C. § 16-31-2-11(b). Ambulance providers must "hold a valid certificate issued by the commission." I.C. § 16-31-3-1(b)(3). A "person holding a certificate or license" issued by the EMS Commission "must comply with the applicable standards and rules," and is subject to "disciplinary sanctions . . . if the department of homeland security determines that the certificate or license holder . . . fails to comply and maintain compliance with or violates any applicable provision, standard or other requirement." I.C. § 16-31-3-14(a)(7). The EMS Commission exercises this authority by reviewing practices and adherence to all applicable regulations. For example, all ambulance providers must include the "[d]estination/transferred to, name . . . [and] [r]eason for choosing destination" in monthly reports that it submits to the Commission. 836 Ind. Admin. Code 1-1-5(b)(92), (98).

Most relevant here, the EMS Commission's oversight includes review of the providers' compliance with transportation destination procedures. *See* 836 Ind. Admin. Code 1-2.1-4. The EMS Commission may effectuate disciplinary action, which includes revocation or suspension of the certificate or license, censure, letters of reprimand, probation, and "[a]ssessment of a civil penalty against the certificate holder or license holder." I.C. § 16-31-3-14(b). Finally, any member of the public may file a complaint with the EMS Commission on its website. Indiana Department of Homeland Security,

18

EMS Complaint Reporting, http://www.in.gov/dhs/3782.htm (last visited Sept. 27, 2016).

This system allows "concerned members of the public and the emergency medical

services community to report EMS issues and complaints directly to the agency." *Id.*

      In sum, the State of Indiana's statutory scheme created the EMS Commission to

develop procedures for ongoing review of emergency ambulance services, I.C. § 16-31-2-

11(a) and, using that authority, the EMS Commission developed administrative codes and

rules regulating Indiana's emergency medical services, including oversight of provider

compliance with transportation destination procedures. *See* 836 Ind. Admin. Code 1-2.1-

4. The EMS Commission effectuates this oversight via administrative proceedings

pursuant to the authority of Ind. Code § 4-21.5-3-6 and Ind. Code § 16-31-3-14. Pursuant

to Ind. Code § 4-21.5-3-7 of the Administrative Orders and Procedures Act, the Findings

and Order of the EMS Commission is appealable. In light of this, it is clear that there is

an adequate forum for Monroe Hospital to challenge IU Health Bloomington's alleged

violations of "protocols for emergency medical transportation, both as established by law

and as dictated by the applicable standard of care." (Compl. ¶ 56). Monroe Hospital's

antitrust lawsuit, attacking IU Ambulance's motivations in determining the "appropriate"

hospital—a determination that is governed by state and local laws—circumvents the State

of Indiana's statutory scheme. Moreover, it is notable that the purpose of the Sherman

Act is to be used as a "consumer welfare prescription." *NCAA v. Board of Regents of

Univ. of Okla.*, 468 U.S. 85 (1984) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343

(1979)). The State of Indiana, by its statutory scheme and through the enactment of the

EMS Commission, has developed comprehensive oversight of emergency medical

services to protect consumer welfare. Therefore, permitting this lawsuit to go forward circumvents the process in favor of a federal forum. This is the very scenario the state-action doctrine was intended to prevent.

Thus, the court holds that the Defendant's actions are exempt from federal antitrust laws under the doctrine of state action. Count I shall be dismissed with prejudice.

### C. Indiana Antitrust Law Immunity (Count II)

Finally, IU Health Bloomington contends that it is immune from state antitrust liability, which is the second count in Monroe Hospital's Complaint, because it is a municipal contractor acting under a comprehensive regulatory scheme and supervised by the state. (Docket No. 17 at ECF p. 28). To support this assertion, IU Health Bloomington cites *Brownsburg Cnty. Sch. Corp. v. Natare Corp.*, where the Indiana Supreme Court held—as a matter of first impression—that the state Antitrust Act does not create a civil treble damage remedy against an arm of the government. 824 N.E.2d 336, 339 (Ind. 2005). In *Brownsburg Cnty. Sch. Corp.*, the court concluded that the Indiana legislature did not intend to subject municipalities to antitrust liability because, among other reasons, government entities are not profit-seeking entities that can be deterred by prohibitions on anticompetitive activity. *Id.* at 346, 348-49. In coming to this conclusion, the court explicitly rejected the applicability of the state action principles outlined in *Parker* to the Indiana Antitrust Act. *Id.* at 348. The court does not agree with IU Health Bloomington's contention that this logic as applied to municipalities naturally extends to private entities when those entities have a contract with a municipality. The holding in *Brownsburg*

20

*Community School Corp.*, was intended for municipal actors, as is apparent from the court's detailed review of the factors that differentiated a municipality from a private entity, including the lack of profit-seeking objectives. *See id.*

Regardless, given the dismissal of Count I, as outlined above, this court lacks subject matter jurisdiction over Count II, a state law claim. A federal court has a responsibility to "police subject matter jurisdiction *sua sponte*." *Hay v. Ind. State Bd. Of Tax Com'rs*, 312 F.3d 876, 879 (7th Cir. 2002). Federal courts are courts of limited jurisdiction. *Teamsters Nat. Automotive Transporters Industry Negotiating Committee v. Troha*, 328 F.3d 325, 327 (7th Cir. 2003). The federal courts may only exercise jurisdiction over cases when that jurisdiction is "specifically authorized by federal statute." *Id.* Jurisdiction exists when a complaint contains a claim that arises under federal law (28 U.S.C. § 1331) or satisfies the requirements of the diversity jurisdiction (28 U.S.C. § 1332). *Bovee v. Broom*, 732 F.3d 743, 744 (7th Cir. 2013).

Once jurisdiction over a case is determined to be absent, the only course is to note the absence of jurisdiction and dismiss the case pursuant to that ground. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). However, the Seventh Circuit "generally discourage[s] district courts from *sua sponte* dismissing a complaint for lack of subject matter jurisdiction without first providing the plaintiff notice and a hearing or an opportunity to amend. Such a dismissal is improper unless the jurisdictional defect is incurable." *George v. Islamic Republic of Iran*, 63 F. App'x 917, 918 (7th Cir. 2003) (citing *Frey v. EPA*, 270 F.2d 1129, 1132 (7th Cir. 2001)). Previously, the court had supplemental jurisdiction (28 U.S.C. § 1367) over Count II because, as alleged by

21

Monroe Hospital, it was directly related to the Plaintiff's federal antitrust claims and

formed part of the same case or controversy. (Compl. ¶ 16). Based on the aforementioned

standards, Monroe Hospital is notified of the absence of jurisdiction in this court and

directed to show cause why the Complaint should not be dismissed.

**V.    Conclusion**

Therefore, IU Health Bloomington's Motion to Dismiss (Docket No. 16) is

**GRANTED**. Count I is **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

Monroe Hospital shall have through **FRIDAY, OCTOBER 28, 2016**, to show cause why

Count II should not be dismissed for lack of subject matter jurisdiction pursuant to Rule

12(b)(1). If Monroe Hospital does not show cause by that date, the court will dismiss

Count II, close the case, and issue a Final Judgment in favor of IU Health Bloomington.

**SO ORDERED** this 30th day of September 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.