UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PRIME HEALTHCARE SERVICES-<br>MONROE, LLC doing business as<br>MONROE HOSPITAL, | )<br>)<br>)<br>) | |
| Plaintiff, | ) | 1:16-cv-00003-RLY-MJD |
| | ) | |
| vs. | ) | |
| | ) | |
| INDIANA UNIVERSITY HEALTH<br>BLOOMINGTON, INC. doing business as<br>IU HEALTH BLOOMINGTON<br>HOSPITAL EMERGENCY MEDICAL<br>TRANSPORT SERVICES; doing business<br>as IU HEALTH BLOOMINGTON<br>HOSPITAL, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFF'S MOTION TO RECONSIDER ENTRY ON
DEFENDANT'S MOTION TO DISMISS AND ON PLAINTIFF'S OBJECTION
TO ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND
COMPLAINT**

The City of Bloomington and Monroe County have an exclusive contract with

Defendant, IU Health Bloomington Hospital Emergency Medical Transport Services.  On

January 4, 2016, Plaintiff, Prime Healthcare Services-Monroe, LLC doing business as

Monroe Hospital ("Monroe Hospital"), filed an antitrust action against Defendant,

Indiana University Health Bloomington, Inc., doing business as IU Health Bloomington

Hospital ("IU Health"), and doing business as IU Health Bloomington Hospital

Emergency Transport Services ("IU Ambulance") (collectively "Defendant").  On

February 16, 2017, Defendant filed a Motion to Dismiss the Complaint, and on

1

September 30, 2017, the court granted the motion with respect to Count I with prejudice. Plaintiff now moves the court to reconsider that ruling. Plaintiff also objects to the Magistrate Judge's ruling denying Plaintiff's Motion for Leave to File Amended Complaint. For the reasons that follow, the court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Reconsider, **SUSTAINS** Plaintiff's Objection, and **GRANTS** it leave to amend its Complaint.

## I.     Motion to Reconsider

A motion to alter or amend judgment under Rule 59(e) requires the moving party to direct the court's attention to either newly discovered material evidence or to a manifest error of law or fact. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999). It is not the appropriate vehicle for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citing *In re Oil Spill*, 794 F. Supp. 261, 267 (N.D. Ill. 1992), *aff'd*, 4 F.3d 997 (7th Cir. 1993)).

Plaintiff challenges the court's finding that Defendant is immune from federal antitrust liability under the state action doctrine. "The state action doctrine seeks to preserve the principles of state sovereignty and federalism without disregarding the procompetitive, free enterprise principles that compose the federal antitrust laws. *Marrese v. Interqual, Inc.,* 748 F.2d 373, 386 (7th Cir. 1984), *abrogated on other grounds by Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 779 (7th Cir. 1994).

This doctrine recognizes that in circumstances where sufficient state action is present, there is a reduced "concern that federal policy is being unnecessarily and inappropriately subordinated to state policy." *Id.* at 387. The doctrine exempts private entities like Defendant from antitrust laws if the alleged anticompetitive activity was (1) "clearly articulated and affirmatively expressed as state policy," and their actions were (2) "actively supervised by the State itself." *Id*. at 386.

Under the "clear articulation" test, the state need not specifically authorize conduct with anticompetitive effects. *LaSalle Nat'l Bank of Chicago v. DuPage Cnty.*, 777 F.2d 377, 381 (7th Cir. 1985). The anticompetitive effects need only be a foreseeable consequence of engaging in the authorized activity. *Id.* The "active supervision" test of prong two requires "that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." *N. Carolina State Bd. of Dental Esam'rs v. FTC*, 135 S.Ct. 1101, 1112 (2015).

The court found the anticompetitive impact in the emergency medical services market was foreseeable and endorsed by the state. Plaintiff challenges the court's analysis on several grounds. First, Plaintiff argues it was not required to "plead around" Defendant's affirmative defense of state-action immunity. Plaintiff alleged, however, that the Indiana Administrative Code authorizes an ambulance service provider, through its medical director, to establish protocols for patient transportation, and that IU Ambulance acted to implement those provisions. (Compl. ¶¶ 19-25). It is, therefore, appropriate to consider state action immunity at the pleading stage "because it provides an *exemption* from Federal antitrust laws and, if applicable, allows for dismissal of the

complaint." *Marrese v. Interqual, Inc.*, 748 F.2d 373, 384 (7th Cir. 1984) (emphasis in original), *abrogated on other grounds by Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 779 (7th Cir. 1994)).

Second, Plaintiff argues the court considered the wrong "market." Plaintiff advocated for the emergency medical services market. The court found the appropriate market for the state action analysis was the emergency *transportation* market because the alleged exclusionary conduct—the decision to deliver patients to IU Health instead of Plaintiff—occurred within the transportation market and not the services market. The court's ruling is supported by Plaintiff's Complaint. (*See* Compl. ¶ 56) ("Despite and contrary to the protocols for emergency medical transportation, both as established by law and as dictated by the applicable standard of care, IU Ambulance and its predecessor have continuously and consistently delivered the vast majority of emergency medical transportation patients to whom they have provided services to IU Hospital and its predecessor Bloomington Hospital for the provision of emergency medical services").

Third, Plaintiff challenges the court's finding that the anticompetitive *effect* in the emergency medical services market was sufficiently foreseeable. In the court's Entry, it noted that Indiana Code § 16-31-5-1 authorized the emergency transportation service contract between the City of Bloomington, Monroe County, and Defendant. In addition, the court noted that the Indiana legislature created the Emergency Management Commission ("EMS"), which, in turn, established a "regulatory plan to ensure that injured patients in the pre-hospital setting are transported to the most appropriate facility within the Indiana trauma system." 836 Ind. Admin. Code 1-2.1-1. As applied to the

facts of this case, the plan provided that IU Ambulance had the authority to develop its own protocols to determine the nearest appropriate hospital. *See id.* 1-2.1-4(b). The provider protocols, prepared by the provider's medical director, (here, a physician employed by Defendant), detail the trauma field triage and transport destination procedures to be used by the provider. *See id.* 1-2.1-3(5). Pursuant to Indiana Code § 16-31-2-11 and 836 Ind. Admin. Code 1-2.1-4, the EMS Commission has the authority to review not only the provider developed procedures, but also the provider's execution of its duties to ensure it is in accordance with those procedures. Given that the legislature authorized providers to develop their own procedures and created a state supervisory process to review both the providers' procedures and the providers' conduct to carry out that procedure, the court finds the anticompetitive effect in the Bloomington/Monroe County emergency medical services market was foreseeable. *See LaSalle Nat. Bank*, 777 F.2d at 381 (citing *Town of Hallie v. City of Eau Claire*, 105 S. Ct. 1713, 1718-19 (1985) ("*Town of Hallie* does not require that the legislature expressly authorize conduct with a subjective anticompetitive purpose. Rather, it is only necessary that the legislature authorize the objective conduct (here cooperative zoning decisions) that foreseeably results in the *anticompetitive effect*.")). Accordingly, the court finds its "clear articulation" analysis was not in error.

Lastly, Plaintiff argues the court erred in finding the "active supervision" prong was satisfied. Plaintiff asserts that Indiana statutory and administrative rules governing the relationship of the Emergency Medical Services Commission and IU Ambulance confirm that the State does not "actively supervise" IU Ambulance's conduct. In other

words, the State does not exercise ultimate control over IU Ambulance's conduct because it gives this control to IU Ambulance itself.

Under Seventh Circuit precedent, active supervision can be present when the activity at issue is not directly carried out by the state, but is instead carried out by others pursuant to state authorization. *Marrese*, 748 F.2d at 388-89 (hospital's peer review committee exempted by state action doctrine because, in relevant part, the Indiana Medical Licensing Board, created by Indiana legislature, reviews communications, records, and determinations of the peer committee). *See also North Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015) (internal citations omitted) ("Active supervision need not entail day-to-day involvement in an agency's operations or micromanagement of its every decision. Rather, the question is whether the State's review mechanisms provide "realistic assurance" that a nonsovereign actor's anticompetitive conduct "promotes state policy, rather than merely the party's individual interests."). But for active supervision to be present, state officials must *"exercise the power to review* particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." *N. Carolina State Bd. of Dental Esam'rs,* 135 S.Ct. at 1112. Upon review of the record that was before the court at the time it ruled, the court finds it did not err.

On a related note, Plaintiff argues it has newly discovered evidence from the EMS Commission related to IU Ambulance's service and patient deliveries. This information, Plaintiff submits, reflects that certain assumptions advanced by Defendant in its motion to dismiss briefing were false. For example, Plaintiff represents that information

provided to the EMS Commission by IU Health, pursuant to 836 Ind. Admin. Code 1-1-5(b), establishes that approximately one-fourth of all runs are missing two critical data points, "destination" and reason for choosing the destination from April 20, 2013 to the present. (Proposed Am. Compl. ¶ 75).

Defendant asserts that the discovery Plaintiff relies on is not newly discovered evidence for purposes of Federal Rules of Civil Procedure 59(e) and 60(b) because it was "previously available" through ordinary diligence. At this juncture, the court need not decide that question because, for purposes of Plaintiff's Motion to Reconsider, the larger issue is the court's decision to dismiss Count I with prejudice.

In *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 520 (7th Cir. 2015), the court observed that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint." When the court dismissed Count I with prejudice, Plaintiff no longer had the opportunity to amend its Complaint pursuant to Rule 15. Accordingly, the court erred in granting Defendant's Motion to Dismiss Count I with prejudice. The September 30, 2016, Entry is hereby amended to show Count I dismissed **without prejudice**. Plaintiff's Motion to Reconsider is **GRANTED** to that extent, but **DENIED** in all other respects.

II.     **Objection to Magistrate Judge's Entry on Plaintiff's Motion for Leave to Amend Complaint**

As noted above, the court granted Defendant's Motion to Dismiss Count I of the Complaint on September 30, 2016, finding that the Defendant was exempt from federal antitrust liability under the state action doctrine.  On October 28, 2017, Plaintiff filed its Motion for Leave to Amend Complaint, seeking to allege additional facts relating to the lack of active supervision by the EMS Commission.  Because Plaintiff's Motion for Leave to Amend was filed months after the deadline set forth in the court's Scheduling Order (June 6, 2016), the court found Plaintiff did not show good cause under Rule 16(b)(4) to amend the pleadings.  *Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016) ("'To amend a pleading after the expiration of the trial court's scheduling order deadline to amend pleadings, the moving party must show 'good cause.'") (quoting *CMFG Life Ins. Co. v. RBS Secs., Inc.*, 799 F.3d 729, 749 (7th Cir. 2015)).  Plaintiff objects to the Magistrate Judge's ruling on grounds that her ruling was clearly erroneous or contrary to law.

Based upon a declaration from defense counsel, the Magistrate Judge concluded that Plaintiff received the information on which its "new" allegations are based in March, April, and, at the latest, May 24, 2016.  Therefore, she found Plaintiff could have sought leave to amend its Complaint long before the court's September 30 ruling on Defendant's Motion to Dismiss.  But the Magistrate Judge failed to adequately consider the breadth of documents Defendant produced between May 23, 2016 and July 8, 2016—a dataset of

45,000 separate ambulance run files and 11,813 pages of documents. The amendment deadline (June 6, 2016) passed during the course of this production.

The primary consideration in a good cause determination under Rule 16(b) is the diligence of the party seeking amendment. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Given the timing of this discovery, and its significant size, the court finds it was not unreasonable for Plaintiff to file its motion for leave to amend when it did. The court therefore **SUSTAINS** Plaintiff's Objection and permits it leave to file its First Amended Complaint.

## I.   Conclusion

For the above-mentioned reasons, the court **GRANTS in part and DENIES in part** Plaintiff's Motion to Reconsider Dismissal of Count I of Plaintiff's Complaint (Filing No. 39). Specifically, the court **GRANTS** the Motion to the extent that the dismissal should have been without prejudice, but **DENIES** the Motion in all other respects. And the court **SUSTAINS** Plaintiff's Objection to Magistrate Judge's Entry on Plaintiff's Motion for Leave to Amend Complaint (Docket No. 53). Plaintiff has five (5) business days from the date of this Entry to file its First Amended Complaint.

**SO ORDERED** this 29th day of September 2017.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record